## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## HAWKES v. BOWLES.

### June 8, 1916.

#### Absent, Cardwell, J.

1. WITNESSES—*Competency—Holder of Negotiable Note—Incompetency of Party Under Section 3346 of Code.*—In an action against the maker of a negotiable note by a holder in due course, who was not a party to the note or the transaction which furnished the consideration therefor, such holder is not incompetent to testify as a witness under section 3346 of the Code, because of the incompetency of one or more of the parties to such note.

2. BILLS AND NOTES—*Holder in Due Course—Right of Recovery—Case at Bar.*—The plaintiff, in the case at bar, is a holder in due course of the negotiable note sued on, which is in all respects regular, and there is no sufficient evidence of knowledge brought home to him, of any infirmity in the instrument or defect in the title of the person negotiating the same to affect his right of recovery thereon. Whatever fraud, if any, was perpetrated on the maker of the note, was perpetrated after it was negotiated to the plaintiff.

Appeal from the Circuit Court of Henrico county. Decree for the complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*David Meade White*, for the plaintiff in error.

*O'Flaherty, Fulton & Byrd* and *Smith & Smith*, for defendant in error.

KEITH, P., delivered the opinion of the court.

Bowles filed his bill in equity in which he states that he is the holder in due course of a note made by Sallie G. Hawkes for the sum of $600, dated April 4, 1911, and payable one year after date to her own order, negotiable and payable at the Church Hill Bank, Richmond, Virginia, which is secured by a deed of trust of even date with the note, executed by Sallie G. Hawkes to Howard Simpson, as trustee, conveying to him a certain three-story building and one acre of land, in the county of Henrico; that when the note became due it was not paid, and thereupon the plaintiff, through his attorneys, called upon Simpson, the trustee, to sell the house and lot. Simpson paid no heed to this demand, and the attorneys for Bowles addressed to him another letter again requesting him to proceed to sell the property held in trust by him, and the trustee still failing to act this bill was filed, making Sallie G. Hawkes and Howard Simpson parties defendant, and praying the court to sell the real estate or so much as might be necessary to satisfy the debt due the complainant.

Mrs. Hawkes answered the bill and admitted that she signed the note of $600 held by the plaintiff; that it was payable to her own order one year after date at the Church Hill Bank, Richmond, Virginia; that it was secured by a deed of trust to Howard Simpson, trustee; and she then alleges that the note was obtained from her by the fraud of one D. D. Steele, from whom the complainant claims to have gotten it; that in 1911 respondent desired to have a house completed upon her property in Henrico county, and about that time she met Steele, who was an ex-convict, but that fact was unknown to respondent; that he represented to her that he was a carpenter and contractor and stated that he could do the work she desired done for

the sum of $600, as he and his brother worked together and would do most of the work themselves; that he led her to believe that he would complete and finish the house for $600, and when respondent informed him that she did not have that much money in cash, he stated that he would do the work provided she would give her note for that amount secured by a deed of trust upon the property. This proposition was satisfactory to respondent, and she and Steele made an agreement whereby he undertook to do the work and finish if for $600, and respondent agreed to pay that amount. She states that she is not a business woman and did not understand that the note could be used by Steele or any other person until the work upon the building was completed; that she was not well acquainted with Steele and innocently trusted him, and believing that he would keep the note, as he had assured her he would do, she delivered it to him. Respondent denies that Bowles is a holder in due course of the note in question, and charges that he knew that Steele was an ex-convict, and knew that he had fraudulently obtained the note. She charges that Bowles did not pay the sum of $600 for the note, but that as a part of the consideration Bowles pretended to allow Steele a credit of $300 on account of the purchase of a farm in Caroline county, Virginia, which he conveyed to Steele. She avers that at the time Bowles acquired the note from Steele, he conveyed his Caroline county farm to Steele for $1,200 and took a deed of trust for $900 and pretended to allow a credit of $300 on the note; that subsequently Bowles took another deed of trust on the farm for $400, for which he paid no consideration, and some time later Steele re-conveyed the farm to Bowles without consideration, and after Bowles had actual knowledge of the fraud of Steele;

and she further claims that even though Bowles had no knowledge of the fraud perpetrated upon her by Steele at the time he acquired the note, still respondent would be entitled to a credit of $300 upon the note.

Upon the issues thus made evidence was taken, and the case coming on to be heard before the circuit court, a decree was rendered in favor of Bowles for the sum of $600, with interest, and directing that unless the note was paid by the defendant within sixty days from the date of the decree, the land should be sold by W. E. Sullivan and M. J. Fulton, trustees appointed for that purpose. To this decree an appeal was allowed.

To maintain the issue upon his part J. R. Bowles was sworn as a witness, whereupon counsel for the defendant objected to any testimony given by him, upon the ground that D. D. Steele, from whom Bowles obtained the note, is a convict in the penitentiary, and therefore Bowles was not a competent witness. This exception was overruled by the circuit court and constitutes the first assignment of error.

Section 3346 of the Code provides, among other things, that "Where one of the original parties to the contract or other transaction, which is the subject of the investigation, is incapable of testifying by reason of death, insanity, infancy, or other legal cause, the other party to such contract or transaction shall not be admitted to testify in his own favor or in favor of any other person whose interest is adverse to that of the party so incapable of testifying, unless he be first called to testify in behalf of such last mentioned party; or unless some person, having an interest in or under such contract or transaction, derived from the party so incapable of testifying, has testified in behalf of the latter or of himself as to such contract or transac-

tion; or unless the said contract or transaction was personally made or had with an agent of the party so incapable of testifying, and such agent is alive and capable of testifying."

The original parties to the contract or other transaction, in this case, were Mrs. Hawkes and D. D. Steele. D. D. Steele is a convict in the penitentiary, and Mrs. Hawkes, the other party to the transaction, was permitted to testify without objection as to her competency, and her deposition appears in the record in this case.

An authority in point is the case of *Grigsby* v. *Simpson, Assignee,* 28 Gratt. (69 Va.) 348. In that case Grigsby and several others executed a bond to Alfred Moss. Moss assigned the bond to Simpson and died. Simpson brought suit and the obligors undertook to prove that the bond was given for an usurious consideration. Their evidence was objected to and excluded. The court said: "The two witnesses offered in this case were two of the obligors: Moss, the obligee, was dead. The contract which was the subject of investigation in this case, was the bond executed by these two witnesses with three other obligors, payable to Moss, the obligee. Moss was one of the original parties to the contract and he was dead. Certainly the case comes within the precise terms of the statute, and upon its literal interpretation these witnesses must be excluded, because one of the original parties to the contract made by and with them (Moss, the obligee) is now dead."

Moss occupied the same relation to that case that Steele does to this. One was disqualified by death and the other by confinement in the penitentiary, with the result that the obligors, standing in a position similar to that of Mrs. Hawkes, were disqualified as wit-

nesses.    We can see no ground upon which to exclude
the testimony of Bowles as an incompetent witness,
and this assignment of error is overruled.

Coming to the evidence as to the execution of the
note, we find that Mrs. Hawkes contracted with Steele,
a colored carpenter, to furnish certain material and do
certain work toward the completion of a dwelling house
upon an acre of land attached thereto, in the county of
Henrico, for which she agreed to pay Steele the sum of
$600.    Not having the ready money to pay for the
material and work, on April 4, 1911, she drew and
signed her negotiable note for $600, making the same
payable to her own order at the Church Hill Bank in
Richmond, Virginia, and then as payee endorsed her
name on the back of the note.    At the same time she
executed a deed of trust upon the three-story building
and acre of land to secure the payment of the note,
and then delivered the note and deed of trust to Steele
for the purpose of raising the money with which to buy
the building material and pay for the carpenter's work.
James C. Page, an attorney, testifies, among other
things, that in March, 1911, Steele came to his office
and stated that Mrs. Hawkes wanted him to complete
the house she was building, and he wanted Page to
see Mrs. Hawkes with reference to preparing the deed
of trust and note; that Page went with Steele and saw
the incomplete house and the lot on which she wished
to give the deed of trust; that Mrs. Hawkes was not at
home at that time, but a few days afterward she came
with Steele to his office and requested him to prepare
the deed of trust and note, and to write a contract
setting out the specifications and the material to be
used in completing the building, which he did, and she
signed the deed and note in his presence.    Page further
testifies that the note was delivered by Mrs. Hawkes to

Steele for the purpose of enabling him to raise money on the note for the completion of the house which she was building; that the whole transaction was gone over thoroughly; that he took pains to explain everything to Mrs. Hawkes, and she was thoroughly satisfied with the transaction at that time.

It seems that Steele inquired of Page if he knew where the note could be negotiated, and Page suggested that Bowles might take it as it was well secured; that Steele took the note to Bowles, who examined it and the deed of trust, and Bowles learning from Steele that Page had written the note and deed of trust in his office for Mrs. Hawkes, before buying the note called up Page and asked him if the note and deed of trust were all right, and Page assured him that they were.

The evidence shows that Bowles bought the note of Steele and paid for it as follows: A check of April 15 for $150, another of the same date for $100, and one of April 19 for $50, making a total of $300. The other $300 was paid by Bowles to Steele by selling and conveying to Steele in April, 1911, a farm in Caroline county for $1,200 and crediting $300 of the purchase price of the note on the $1,200, taking a deed of trust on the farm to secure the payment of the balance due Bowles for the farm. Other transactions are referred to in the evidence which do not seem to have any material bearing upon the question of how Bowles acquired title to the $600 note.

The note in question in this case seems to conform to all the requirements of the negotiable instruments act. It was duly delivered, and appelle, Bowles, stands as a holder in due course. Everything with respect to the execution and negotiation of the note is perfectly regular, and whatever fraud, if any, was perpetrated upon Mrs. Hawkes occurred after the nego-

tiation of the note and consisted in the failure of Steele to live up to and perform the contract as a consideration for which the note was given.    There is no sufficient evidence of knowledge brought home to Bowles of the existence of any infirmity in the note; and section 56 of the negotiable instruments law provides that "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

We have been unable to discover such evidence in the record, and upon the whole case we are of opinion that the decree of the circuit court must be affirmed.

*Affirmed.*